IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FABIAN VIVERO, | CASE NO. CV F 08-1751 LJO DLB |
| Plaintiff, | **ORDER ON DEFENDANTS'**<br>**MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| CITY OF MERCED POLICE DEPARTMENT, et al., | |
| Defendants. | |

By notice filed on September 18, 2009, defendants City of Merced Police Department, Merced Police Officer Joseph Henderson, erroneously sued as Joseph Anderson, and Merced Police Sergeant Curt Gorman move pursuant to Rule 56 for an order granting summary judgment. Plaintiff Fabian Vivero ("plaintiff") did not submit an opposition, and the Court took the motion under submission without an opposition. The hearing was VACATED pursuant to Local Rule 78-230(h). Subsequently, plaintiff filed an opposition to the motion on October 9, 2009. Defendants then filed a reply brief on October 27, 2009. Having considered the moving and opposition papers, as well as the Court's file, the Court issues the following order.[1]

**FACTUAL BACKGROUND**

This action arises out of an alleged use of excessive force by off-duty police officers against plaintiff. Plaintiff alleges that the officers were searching for him on suspicion of "tagging" a police vehicle on June 6, 2008 at about 1:00 a.m. (Doc. 1, Complaint ¶5.)

---

[1] The Court exercised its discretion to consider the untimely opposition papers in light of the dispositive nature of the motion.

1

**A.     Background of the Incident**

The facts of the case are largely undisputed.[2] On June 6, 2008, at approximately 12:30 a.m., Officer Henderson and Sgt. Gorman were sitting on the balcony of Sgt. Henderson's home, overlooking Princeton Court and San Jose Avenue in the City of Merced; both officers were off-duty at the time. (Doc. 21, Defendant's Separate Statement Fact no. 3.) Officer Henderson's Merced Police Department patrol vehicle was parked on the east side of San Jose Avenue facing northbound, just north of Princeton Court, and was easily observable from Officer Henderson's balcony. (Doc. 21, Defendant's Separate Statement Fact no. 4.)

Officer Henderson saw a dark-colored sport utility vehicle drive northbound on San Jose Avenue and pull over approximately 75-100 yards in front of his marked patrol vehicle. (Doc. 21, Defendant's Separate Statement Fact no. 5.) Officer Henderson saw the driver of the SUV, later identified as plaintiff, exit the vehicle but leave it running, then run towards the Merced Police patrol vehicle. (Doc. 21, Defendant's Separate Statement Fact no. 6.) Plaintiff stopped at the patrol vehicle, and Officer Henderson heard the sound of a spray-paint can being used. (Doc. 21, Defendant's Separate Statement Fact no. 7.) Officer Henderson concluded that Plaintiff was spray-painting the side of his patrol unit, in violation of California Penal Code § 594(a)(1). (Doc. 21, Defendant's Separate Statement Fact no. 8.) Officer Henderson watched as plaintiff crouched near the rear driver-side door and then ran northbound back towards his vehicle. (Doc. 21, Defendant's Separate Statement Fact no. 9.)

Officer Henderson and Sgt. Gorman then ran down the stairs towards plaintiff's vehicle. (Doc. 21, Defendant's Separate Statement Fact no. 10.) As the officers were off-duty, they were wearing only T-shirts and shorts, and carried none of the defense and control devices—such as firearm, taser, baton, pepper-spray and handcuffs—that they would carry if on-duty; Officer Henderson was barefoot. (Doc. 21, Defendant's Separate Statement Fact no. 11.)

Officer Henderson and Sgt. Gorman approached plaintiff's vehicle, identified themselves as Merced Police Officers, and commanded plaintiff to stop. (Doc. 21, Defendant's Separate Statement Fact

---

[2] Plaintiff does not dispute the facts set forth in this section. (See Plaintiff's Separate Statement Doc. 26, wherein plaintiff does not dispute Facts 1 through 50.) Plaintiff disputes the facts as they pertain to the force applied after he was removed from his vehicle.

2

no. 12.) Sgt. Gorman arrived at the driver's side of the vehicle first and reached inside in an attempt to prevent plaintiff from driving away. (Doc. 21, Defendant's Separate Statement Fact no. 13.) A passenger, later identified as Kyle Guillory, was in the front passenger seat of plaintiff's vehicle. (Doc. 21, Defendant's Separate Statement Fact no. 14.) At that time, Officer Henderson did not know if there were further passengers in plaintiff's vehicle. (Doc. 21, Defendant's Separate Statement Fact no. 15.)

Plaintiff and Mr. Guillory were both intoxicated on the night in question. (Doc. 21, Defendant's Separate Statement Fact no. 16.) Due to their intoxication, neither can recall anything that occurred between plaintiff picking up Mr. Guillory in downtown Merced and Sgt. Gorman's attempts to prevent plaintiff from driving his vehicle away following the spray-painting incident. (Doc. 21, Defendant's Separate Statement Fact no. 17.)

Plaintiff attempted to put his vehicle in gear, and Sgt. Gorman grabbed his shirt, told him to stop, and attempted to turn off the vehicle's ignition. (Doc. 21, Defendant's Separate Statement Fact no. 18.) Plaintiff drove away northbound. (Doc. 21, Defendant's Separate Statement Fact no. 19.) Sgt. Gorman was still hanging onto plaintiff through the window as plaintiff began driving away. (Doc. 21, Defendant's Separate Statement Fact no. 20.)

Officer Henderson and Sgt. Gorman jumped into Sgt. Gorman's pickup truck and followed plaintiff. (Doc. 21, Defendant's Separate Statement Fact no. 21.) Sgt. Gorman called Merced Police Dispatch on his cell phone, advised what had occurred, the vehicle he and Officer Henderson were in, and that the officers were following the suspects; he continued to advise dispatch of the streets the officers passed. (Doc. 21, Defendant's Separate Statement Fact no. 22.) Plaintiff turned into a cul-de-sac, then turned around and began driving back directly toward Sgt. Gorman's truck. (Doc. 21, Defendant's Separate Statement Fact no. 23.) Sgt. Gorman parked his pick-up truck in such a way as to prevent the Plaintiff from leaving the cul-de-sac. (Doc. 21, Defendant's Separate Statement Fact no. 24.) The officers exited Sgt. Gorman's truck, and ran to the driver's side of plaintiff's vehicle. (Doc. 21, Defendant's Separate Statement Fact no. 25.) Officer Henderson opened the door of plaintiff's vehicle, grabbed him by the arm and pulled him out of the vehicle. (Doc. 21, Defendant's Separate Statement Fact no. 26.)

Plaintiff does not recall much about this moment, other than "somehow, some way getting

yanked out of the car, getting hit[;]" he does not recall how he was pulled out of the truck. (Doc. 21, Defendant's Separate Statement Fact no. 27.)

**B.     Dispute in the Facts as to the Amount of Force**

It is at this point that the facts become disputed. According to Officer Henderson, plaintiff began flailing about, swinging at both officers, and striking Sergeant Gorman in the face. (Henderson Dec., ¶ 8.) Defendants present evidence that Officer Henderson gave plaintiff two to three distraction blows to the face. (Doc. 21, Defendant's Separate Statement Fact no. 28.) A distraction blow as taught in the Police Academy and authorized by the Merced Police Department can be a blow with a closed fist. The blow is a short, quick, jabbing blow, designed to inflict distracting pain in order to obtain compliance, similar to an arm bar or wrist lock, but not to inflict disabling injury. (Doc. 21, Defendant's Separate Statement Fact no. 29.) Officer Henderson then grabbed plaintiff by his left arm, placed him in an arm bar in an attempt to gain control of him, and took him to the ground. (Doc. 21, Defendant's Separate Statement Fact no. 30.) Plaintiff's face hit the pavement when he fell. (Doc. 21, Defendant's Separate Statement Fact no. 31.)

After plaintiff was on the ground, Officer Henderson straddled him. (Doc. 21, Defendant's Separate Statement Fact no. 32.) In addition, according to Officer Henderson, he ordered plaintiff to stop resisting. (Henderson Dec., ¶ 11.) According to Officer Henderson, plaintiff attempted to get up again; Officer Henderson struck him approximately two more times in the face in order to obtain his compliance; Plaintiff continued to attempt to rise; Officer Henderson gave him two more distraction blows so that he would be able to gain control of his arms. (Henderson Dec., ¶ 11.)

Plaintiff presents a different version of evidence which includes what standers-by witnessed during what the witnesses call "the beating." Henderson was "beating the hell out of" plaintiff. Henderson was sitting on top of plaintiff and was using "both hands, right, left, right, left" hitting plaintiff in the face. (Doc. 26, Opposition Fact 52.) Plaintiff's face "was going back and forth" each time he got punched. (Doc. 26, Opposition Fact 52.) Henderson was hitting plaintiff on the ground for what was about five minutes. (Doc. 26, Opposition Fact 53.) Plaintiff's head was bouncing off the pavement and going back and forth. (Doc. 26, Opposition Fact 54.) Plaintiff was not resisting or struggling. (Doc. 26, Opposition Fact 63, 65.) Towards the end of the strikes, plaintiff was not resisting,

was lying perfectly still in a fetal position, and unconscious. (Doc. 26, Opposition Fact 56-58, 66, 67.) He was still being hit. (Doc. 26, Opposition Fact 67.) The standers-by were yelling to stop and "enough." (Doc. 26, Opposition Fact 59-60.) There was a pool of blood the size of a basketball under plaintiff's head. (Doc. 26, Opposition Fact 57.) Thus, there is a conflict in evidence as to whether plaintiff was resisting and whether he was being hit while not resisting and laying submissive.

Plaintiff alleges three claims for relief:

1. First Cause of Action for Assault;
2. Second Cause of Action for Battery;
3. Third cause of Action for 42 U.S.C. §1983 Violation of Civil Rights.

In plaintiff's opposition papers, plaintiff agreed to dismiss all his claims against defendant Curt Gorman. (Doc. 27, Opposition p.1.) Plaintiff also stipulated to dismiss his claims in the Third Cause of Action pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) as to the Police Department. Thus, plaintiff proceeds solely as to claims against Defendant Henderson for excessive force in all three causes of action and vicarious liability of the Police Department for the assault and battery claim.

**ANALYSIS AND DISCUSSION**

**A.   Summary Judgment/Adjudication Standards**

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. F.R.Civ.P. 56©; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56©; *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464,

5

467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56© mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

**B.     Whether Plaintiff was Subjected to Excessive Force**

Defendant Henderson argues that he is entitled to summary judgment as to the third cause of action. Defendant Henderson argues that he is entitled to use reasonable force to protect himself and to overcome plaintiff's flight and resistance. Defendant argues that he also is entitled to qualified immunity.

**1.     Excessive Force Standards**

All claims that law enforcement officers used excessive force, either deadly or non-deadly, in the course of an arrest, investigatory stop, or other seizure of a citizen are to be analyzed under the Fourth Amendment and its standard of objective reasonableness. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003), *cert. denied*, 542 U.S. 918 (2004). The pertinent question in an excessive force case is whether the use of force was "objectively reasonable in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, 109 S.Ct. 1865; *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007). The analysis of whether a specific use of force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *Blankenhorn*, 485 F.3d at 477; *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007). "We first assess the quantum of force used to arrest [the plaintiff]" and then "measure the governmental interests at stake by evaluating a range of factors." *Davis*, 478 F.3d at 1054 (unreasonable force was used where, after refusing to consent to being searched, officer forcefully slammed suspect head-first against a wall, and then swung him into another wall, also

head-first, thereby breaking his neck).

Factors that are considered in assessing the government interests at stake include, but are not limited to, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *Blankenhorn*, 485 F.3d at 477; *Davis*, 478 F.3d at 1054. Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *Drummond*, 343 F.3d at 1058. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865; *Drummond*, 343 F.3d at 1058. Since "[n]ot every push or shove, even if it may seem unnecessary in the peace of the judge's chambers, ... violates the Fourth Amendment," *Graham,* 490 U.S. at 396, 109 S.Ct. 1865, "[n]either tackling nor punching a suspect to make an arrest necessarily constitutes excessive force." *Blankenhorn*, 485 F.3d at 477. "Force is excessive when it is greater than is reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir.2002). When the circumstances show that there is no need for force, any force used is constitutionally unreasonable. See *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001); *see also Motley v. Parks*, 432 F.3d 1072, 1089 (9th Cir. 2005) (reasonable to draw firearm but unreasonable to keep weapon trained on infant).

Here, defendant has failed to show that the facts and circumstances, when all interferences are drawn in favor of the plaintiff, warrant a finding of reasonable force. The evidence shows that plaintiff attempted to flee defendant, but the evidence also shows that the officers were in plain clothes and in an unmarked vehicle. In a version of events believable by a jury, plaintiff was pulled from his car by unknown assailants who he then attempted to resist. Once plaintiff was pinned to the ground, he was repeatedly struck and rendered unconscious and struck more times while laying helpless. He was struck while fully pinned and while bystanders where screaming to stop.

In his reply brief, defendant attempts to distinguish plaintiff's facts regarding the amount of force used. For instance, defendant argues that the witnesses are speculating: "First, [witness] Hiser's conjecture about the severity of the beating is merely his own speculative opinion based on the limited

circumstances he witnessed." (Doc. 31, Reply Brief, p. 3.) Defendant also argues that "Plaintiff's head moved back and forth in response to Officer Henderson's blows is consistent with the officer's own description of the distraction blows he employed: quick, sharp jabs intended to inflict distracting pain in order to obtain compliance." (Doc. 31, Reply Brief, p. 3.)

Defendant's attempt to make these facts immaterial does not negate that there is an issue of fact as to whether the amount of force was reasonable under the circumstances. The Court must draw all reasonable inferences in favor of the plaintiff. *Anderson*, 477 U.S. at 255 (The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party). At least one witness has testified that he was screaming "stop" as to the number, and presumably, the force of the blows. There is testimony that plaintiff lay submissive while being struck. Drawing all reasonable inferences in favor of plaintiff, a reasonable jury could conclude that the amount of force was excessive in the totality of the circumstances.

Next, the Court considers the governmental interest that might justify the use of such force. Here, plaintiff "tagged" a police officer, and fled the scene with a police officer hanging onto the window as he drove away. The spray painting incident and leaving the scene are not of such serious conduct that authorize a police officer to beat a suspect into unconsciousness. The disregard of the officer's safety as he drove away is tempered by the lack of evidence that the officer identified himself as a police officer when plaintiff was later taken out of the vehicle. The officer was dressed in plain clothes. Following the chase, and once plaintiff was on the ground and submissive, plaintiff did not pose an immediate threat to the safety of the officers or others, yet there is evidence plaintiff was continually beaten. Balancing these factors is traditionally a jury's function and, here, the balance does not weigh so strongly and unequivocally in the defendant's favor to conclude that summary judgment is appropriate. *See Blankenhorn*, 485 F.3d at 477-78. Instead, the jury must sort through the facts as the officers knew them and, from them, infer what a reasonable officer's perception and resultant conduct would have been.

/////

/////

### 2. Qualified Immunity

Defendants argue that defendant Henderson is immune from liability on plaintiff's third claim for relief for excessive force.

Where a constitutional violation occurs, a police officer is entitled to qualified immunity if he acted reasonably under the circumstances. *KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9th Cir. 2007). The Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272, outlined a two-step approach to qualified immunity. The first inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. If the answer to the first inquiry is yes, the second inquiry is whether the right was clearly established: in other words, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. Recently, the Supreme Court in *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. The Supreme Court further stated that "the judges of the district courts and the courts of appeals are in the best position to determine [what] order of decisionmaking will best facilitate the fair and efficient disposition of each case." *Id.* at 821.

In this case, if the jury were to credit plaintiff's version of events, it could find that a reasonable officer in Henderson's position would have known that his conduct crossed the line and violated the Fourth Amendment. Since *Graham*, case law has held that a suspect's mere fleeing or resisting as well as being a suspect of a serious crime does not alone justify an exceptional amount of force against him. Instead, the force must be reasonable, and at least roughly commensurate with that needed to subdue the suspect. The degree to which the suspect appears to be a threat to others, including the officers, is an important part of this calculus and requires the officer to consider whether the suspect is armed, his level of aggression, and myriad other facts that bear on the situation. *See Graham*, 490 U.S. at 394-97 ("the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments").

1   Here, if the plaintiff's version of events were credited, plaintiff was not resisting, completely
2 subdued and then unconscious while defendant Henderson was astride him with knees on his elbow's
3 and beating plaintiff. Witnesses were screaming "enough," but defendant did not stop. Plaintiff did not
4 try to strike, push, or otherwise attack the officers while Henderson beat him when he was on the ground.
5 Under *Graham,* if the jury credits plaintiff's evidence, the jury might conclude that the officer acted
6 unreasonably. *See Palmer v. Sanderson*, 9 F.3d 1433, 1434-36 (9th Cir.1993) (holding that an officer
7 who, during a traffic stop, jerked the plaintiff out of his car, handcuffed him extremely tightly, forcefully
8 shoved him into the back of a patrol car, and refused to loosen his handcuffs was not entitled to qualified
9 immunity because no reasonable officer would have thought this conduct was constitutional); *Chew v.*
10 *Gates*, 27 F.3d 1432, 1436, 1443 (9th Cir. 1994) (holding that, under *Graham*, the fact that the defendant
11 officer used "severe force" to arrest a suspect who did not pose an immediate threat to the safety of
12 police officers was sufficient to preclude summary judgment for the officer, notwithstanding the fact that
13 the suspect had attempted to flee and was the subject of three outstanding felony warrants), *cert denied*,
14 513 U.S. 1148 (1995).

15   In light of the facts in the most favorable version to plaintiff, a reasonable officer in Henderson's
16 position would have known that the conduct complained of by plaintiff was not reasonable force.
17 Therefore, defendant Henderson is not entitled to qualified immunity.

18 **C.   Assault and Battery**

19   A plaintiff makes a prima facie case of assault and battery by making the same showing required
20 under a claim for excessive force under 42 U.S.C. § 1983. *Munoz v. City of Union City*, 120
21 Cal.App.4th 1077, 16 Cal.Rptr.3d 521 (2004); *Susag v. City of Lake Forest*, 94 Cal.App. 4th 1401, 1413
22 (2002) (To make a prima facie case for either battery by a police officer or violation of section 1983, the
23 plaintiff must demonstrate the unreasonableness of the force used)Under California law, an "arresting
24 officer may use such force as is reasonably necessary to effect a lawful arrest." *Ting v. United States*,
25 927 F.2d 1504, 1514 (9th Cir. 1991).

26   Here, plaintiff has demonstrated that a factfinder could reasonably conclude that Henderson used
27 excessive force against the plaintiff, as explained above in the context of plaintiffs' § 1983 claims.
28 Consequently, defendants' motion is denied as to the assault and battery claims.

**CONCLUSION**

For all the foregoing reasons, the Court Orders as follows:

1. Pursuant to the Stipulation of the parties, Defendant Curt Gorman is dismissed from this action.
2. Pursuant to the Stipulation of the parties, the Third Cause of Action is dismissed as to defendant City of Merced Police Department.
3. The motion for summary judgment is DENIED.

IT IS SO ORDERED.

**Dated:   October 28, 2009**                              /s/ Lawrence J. O'Neill
                                                                              UNITED STATES DISTRICT JUDGE